UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN D. HOWARD, individually and as assignee of Jaime Frankfurt, LLC,

          *Plaintiff*,

       -against-

ANN FREEDMAN, GLAFIRA ROSALES, KNOEDLER GALLERY, LLC, d/b/a KNOEDLER & COMPANY, MICHAEL HAMMER, 8-31 HOLDINGS, INC., JOSÉ CARLOS BERGANTINOS DIAZ, and JAIME R. ANDRADE,

          *Defendants*.

ECF CASE

12-CV-5263 (PGG)

# MEMORANDUM OF LAW IN SUPPORT OF MOTION PURSUANT TO FED. R. CIV. P. 37

Dated: August 30, 2013

**CAHILL PARTNERS** LLP

John R. Cahill
Ronald W. Adelman
70 West 40th Street
New York, NY 10018
(212) 719-4400

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

                                                           **Page**

TABLE OF AUTHORITIES…………......................................................................................iii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ...............................................................................................1

ARGUMENT ....................................................................................................................9

CONCLUSION................................................................................................................16

## TABLE OF AUTHORITIES

**Cases**
*Byrnie v. Town of Cromwell Bd. of Educ.*,
243 F.3d 93 (2d Cir. 2001) .................................................................................................................. 9

*Harkabi v. SanDisk Corp.*,
275 F.R.D. 414 (S.D.N.Y. 2010) .................................................................................................. 11,13

*In re Application of Chevron Corp.*,
736 F. Supp. 2d 773 (S.D.N.Y. 2010) ............................................................................................ 15

*In re Grand Jury Subpoena*,
781 F.2d 238 (2d Cir. 1985) ............................................................................................................ 15

*In re Kidder Peabody Sec. Litig.*,
168 F.R.D. 459 (S.D.N.Y. 1996) .................................................................................................... 14

*In re NTL, Inc. Secs. Litig.*,
244 F.R.D. 179 (S.D.N.Y. 2007) .................................................................................................... 11

*In re Pfizer Inc. Secs. Litig.*,
288 F.R.D. 297 (S.D.N.Y. 2013) .................................................................................................... 10

*John Doe Co. v. United States*,
350 F.3d 299 (2d Cir. 2003) ............................................................................................................ 14

*Morales v. Zondo, Inc.*,
204 F.R.D. 50 (S.D.N.Y. 2001); ..................................................................................................... 14

*R.F.M.A.S., Inc. v. Mimi SO.*,
271 F.R.D. 13 (S.D.N.Y. 2010). ....................................................................................................... 9

*Ramseur v. Chase Manhattan Bank*,
865 F.2d 460 (2d Cir. 1989) ............................................................................................................ 15

*Residential Funding Corp. v. De George Financial Corp.*,
306 F.3d 99 (2d Cir. 2002) ........................................................................................................ 9-12

*Robbins & Myers, Inc.*,
No. 01-CV-00201S(F), 2010 WL 2595332 (W.D.N.Y. June 24, 2010) .................................... 14

*Rutgerswerke AG and Frendo S.p.A. v. Abex Corp*,
No. 93 CIV 2914 JFK, 2002 WL 1203836 (S.D.N.Y. June 4, 2002). ........................................ 9

*Short v. Manhattan Apartments, Inc.*,
286 F.R.D. 248 (S.D.N.Y. 2012); ................................................................................................... 11

*Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.*,
111 F.R.D. 76 (S.D.N.Y. 1986) ...................................................................................................... 15

*United States v. Bilzerian,*
926 F.2d 1285 (2d Cir. 1991) .......................................................................................................... 14

*Weizmann Inst. of Science v. Neschis,*
No. 00 Civ. 7850 (RMB), 2004 WL 540480 (S.D.N.Y. Mar. 17, 2004) ....................................... 14

*West v. Goodyear Tire & Rubber Co.,*
167 F.3d 776 (2d Cir. 1999) ............................................................................................................ 9

*Yu Chen v. LW Restaurant, Inc.,*
No. 10 CV 200(ARR), 2011 WL 3420433, (E.D.N.Y. Aug. 3, 2011) ..................................... 10,12

*Zubulake v. UBS Warburg LLC,*
220 F.R.D. 212 (S.D.N.Y. 2003) ................................................................................................... 11

**Statutes**

Fed. R. Civ. P. 37 ............................................................................................................................. 1

Fed. R. Evid. 502(g)(2) ................................................................................................................. 10

Plaintiff John Howard, individually and as assignee of the claims of Jaime Frankfurt, LLC ("Plaintiff" or "Howard"), respectfully submits this memorandum of law in support of his motion pursuant to Fed. R. Civ. P. 37 to impose monetary and other sanctions on defendants Michael Hammer ("Hammer"), and Knoedler Gallery, LLC ("Knoedler") for spoliation of evidence and other discovery-related misconduct.[1]

## PRELIMINARY STATEMENT

Since commencing this action in July 2012, Plaintiff has made persistent efforts to move this litigation forward and defendants have resisted at every turn. The range of tactics that defendants have employed over the past year, have included production delays, withholding relevant documents, refusing to answer deposition questions, and even spoliation of evidence. Plaintiff respectfully requests that the Court impose appropriate sanctions, including preclusion, to remedy the prejudice that defendants' actions have caused to Plaintiff and to deter such conduct in the future. Plaintiff also requests that the Court order Hammer and Knoedler to provide additional discovery, reimburse him for the costs incurred as a result of their discovery tactics, including, but not limited to, the costs associated with bringing this motion.

## STATEMENT OF FACTS

During the course of discovery, Plaintiff has learned that Knoedler's and Hammer's document productions were not only delayed, but also deficient: relevant documents have been destroyed or otherwise withheld. Plaintiff's concern over spoliation of evidence was raised by this October 20, 2009 letter from Frank Del Deo to Michael Hammer:

---

[1] Although this motion seeks relief against Hammer and Knoedler, based on circumstances particularly applicable to those defendants, Plaintiff reserves the right to seek similar relief against some or all of the other defendants.

1

> October 20, 2009
>
> Mr. Michael A. Hammer
> The Armand Hammer Foundation
> 9510 Jefferson Boulevard
> Culver City, CA  90232                                        via FEDEX
>
> Dear Michael,
>
> As you requested, I am sending to you herewith an updated list of Knoedler-owned inventory, with columns including **Cost** and **Retail** and **Date Purchased.**
>
> Please note that, with respect to the "Rosales" and "Masaccio" pictures, we have changed their designation, for the time being, to NFS (not for sale).
>
> With all best,
>
> Frank Del Deo
> Director

*See* KG-00002280, Oct. 20, 2009 letter from Frank Del Deo to Michael Hammer ("October 2009 Letter"), Declaration of Ronald W. Adelman ("Adelman Decl.") at Exhibit A. The letter references an additional, highly relevant document—a list of all Knoedler-owned inventory with associated information about its cost, retail price, purchase date, and "not for sale" designations—that is nowhere to be found in defendants' document productions.

Plaintiff questioned Mr. Del Deo and Mr. Hammer about this letter at their respective depositions, and they testified that the list referenced in the letter was in fact created by Knoedler and sent to Michael Hammer. *See* Transcript of the Deposition of Frank Del Deo, taken May 10, 2013 ("Del Deo Dep. Tr.") at 140:19-141:7, Adelman Decl. at Exhibit B; Transcript of the Deposition of Michael Hammer, taken May 8, 2013 ("Hammer Dep. Tr.") at 292:20-25, Adelman Decl. at Exhibit C. Mr. Del Deo further testified that the list would have been maintained in a file of his correspondence. *See* Del Deo Dep. Tr. at 141:8-17. Accordingly, as of

October 2009, defendants collectively were in possession of at least three copies of the list: (1) the original version, which was presumably electronic and would have been saved on Knoedler's computer system; (2) a hard or electronic version maintained as part of Mr. Del Deo's correspondence; and (3) the version that was actually sent to and received by Mr. Hammer. Yet, the document does not exist in any of the defendants' document productions.

The document's conspicuous absence from both Knoedler's and Hammer's files is most troubling because it was created in October 2009, well after they were, by their own admissions, on notice of the possibility of litigation over the works in the Rosales collection and had actually received a federal grand jury subpoena. *See* Knoedler Gallery, LLC Privilege Log, Adelman Decl. at Exhibit D; Hammer Dep. Tr. at 297:2-9. As discussed further below, the destruction of this document is a quintessential case of spoliation of evidence.

More broadly, the discovery phase of this litigation has been characterized by a pattern of obstructive behavior by counsel for Hammer and Knoedler. When Plaintiff filed his complaint (the "Complaint") in July 2012, defendants had already gathered documents relevant to the Complaint in 2009 pursuant to an internal investigation, litigated many of the same issues raised in the Complaint, and produced tens of thousands of relevant documents in related action, *Lagrange v. Knoedler Gallery et al.*, No. 11 Civ. 8757 (PGG) (S.D.N.Y.) The documents were produced again shortly thereafter in *De Sole v. Knoedler Gallery et al.*, No. 12 Civ. 2313 (PGG) (S.D.N.Y.). Plaintiff's counsel reached out to defendants' counsel almost immediately after filing the Complaint to request copies of the previously produced documents, with the hope that discovery would proceed expeditiously and efficiently for all parties. Knoedler declined to provide Plaintiff with any documents, despite the fact that the cost of doing so would have been little more than the price of a blank computer data disk.

3

On August 22, 2012, Plaintiff's counsel attended the Court's conference in *De Sole*, at which the Court stated that the *Howard* and *De Sole* cases "crie[d] out for cooperation between counsel because of the overlap in cases and the potential for an enormous waste of time and money if witnesses that are addressed in topics in more than one case are repeatedly deposed." Plaintiff continued to ask defense counsel for initial disclosures and copies of documents that had already been produced, but defendants continued to rebuff Plaintiff's requests even after the Court asked the parties to cooperate.

On September 19, 2012, Plaintiff set a letter to defendants asking once more that they comply with the Court's instruction to cooperate. *See* Letter dated September 19, 2012 from Ronald Adelman to Charles Schmerler, Adelman Decl. at Exhibit E. The letter explained Plaintiff's requests and willingness to engage as follows:

> In furtherance of the cooperation that Judge Gardephe urged, we are willing to participate in [the *De Sole*] depositions to reduce overlap to the extent possible. However, such participation is impossible without, at a minimum, the parties' Rule 26 initial disclosures and the production to us of all documents already produced in the *Lagrange* and *DeSole* cases. We know that Knoedler and Ms. Freedman have already made such productions, and thus producing them to us should involve no more than burning a new CD. Similarly, we believe that Ms. Rosales and Mr. Andrade have already been subpoenaed and, we assume, produced or at least reviewed documents. … We therefore formally request their production no later than September 28, 2012. On our end, we are willing to make initial disclosures and produce documents quickly, as we said in our e-mail of August 8 to counsel for the Knoedler defendants and Freedman and now reiterate to all counsel.

In response to the September 19 Letter, Knoedler and Hammer neither produced any documents nor offered any reason for their refusal to do so.

At the next discovery conference, on December 6, 2012, counsel for Knoedler and Hammer evaded the Court's explicit questions regarding defendants' obstructive conduct. The Court acknowledged Plaintiff's representations that defendants had "failed to produce documents

4

that are sitting on a desk in [defendants' counsel's] office right now that were produced in another case[,]" and asked Mr. Schmerler directly: "What is your explanation." Mr. Schmerler responded: "It is irrelevant to this." *See* December 6 Hearing Transcript at 42:18-19, Adelman Decl. at Exhibit F. Mr. Schmerler went on to represent that his clients were "prepared to produce documents[,]" *id.*, but when Plaintiff followed up nearly two weeks later Mr. Schmerler stated that Plaintiff would "see nothing" from his clients until after the production of their expert report. *See* letter dated December 18, 2012 from John Cahill to Charles Schmerler, Adelman Decl. at Exhibit G.

Knoedler's and Hammer's first document production (*i.e.*, the documents that they had already produced in two other litigations and needed only to burn to disc and deliver to Plaintiff) was ultimately not provided to Plaintiff until January 18, 2013—more than *five months* after Plaintiff first requested it; more than *four months* after the Court asked counsel for all parties to cooperate; and nearly *six weeks* (*i.e.*, about 25% of the *total* time available for fact discovery) after Mr. Schmerler represented to the Court that his clients were "prepared to produce documents." Knoedler and Hammer similarly delayed for months sending a privilege log to Plaintiff, even though the privilege log eventually produced was virtually identical to the privilege log in the *Lagrange* case and accordingly must have been completed before Howard's Complaint was even filed.

Knoedler's and Hammer's delayed document productions continued throughout the discovery phase, significantly prejudicing Plaintiff. On several occasions, they deliberately withheld production of unquestionably relevant and unprivileged documents until the eve of the deposition of the pertinent witness for the purpose of impeding Plaintiff's ability to depose that witness, including in the cases of vital witnesses such as Melissa De Medeiros, Ruth Blankschen,

E.A. Carmean, and Irving Sandler. They offered no valid explanation for these last-minute productions, presumably because none existed—the productions were delayed solely to frustrate Plaintiff's opportunity to effectively depose key witnesses.

More recently, Plaintiff has also learned of additional relevant documents that were excluded from defendants' productions – letters only produced by one of the victimized purchasers in response to a subpoena – regarding concerns about the authenticity of works in the Rosales Collection that were sent to and from Knoedler, one of its clients, and the law firm representing Knoedler in this litigation. *See* March 23, 2006 Letter from Ann Freedman to Jay Shidler, Adelman Decl. at Exhibit H; December 19, 2011 Letter from Howard Nagelberg to Michael Hammer, Adelman Decl. at Exhibit I; January 5, 2012 Letter from Andrius Kontrimas to Howard Nagelberg, Adelman Decl. at Exhibit J (collectively, the "Shidler Letters"). The exclusion of documents such as these from defendants' productions—particularly when coupled with the spoliation of evidence described previously—raises serious concerns about the thoroughness of defendants' retention of, search for, and production of relevant documents.

After months of delayed and deficient document productions, defendants continued to apply their evasive discovery tactics at depositions. They repeatedly asserted the attorney-client privilege to obstruct discovery of relevant non-privileged information such as dates of and persons in attendance at certain meetings and the general subject matter discussed at meetings during which counsel was present. For example, the following exchanges took place at the depositions of Knoedler's most-recent Director Frank Del Deo and its owner-defendant Michael Hammer, respectively:

> Q. And who was the -- who was the attorney who was present?
>
> A. It was an attorney with the firm of Herrick something and something, as I recall.

6

>Q. Was that the first time you had – do you know the name of the attorney?
>
>A. I believe -- I think his name was David Rosenfield, if I remember correctly.
>
>MS. DeCARMINE: That is as far as I'm going to let him answer on this line.
>
>Q. Who else was present at the meeting besides David Rosenfield?
>
>MS. DeCARMINE: I'm not going --
>
>MR. CAHILL: You're not going to let me ask who else was present?
>
>MS. DeCARMINE: No.
>
>MR. CAHILL: And you're instructing him not to answer that?
>
>MS. DeCARMINE: I'm instructing him not to answer that.

Del Deo Dep. Tr. at 36:20-37:14.

>Q. When did you first hear that [Knoedler was selling works owned by Mr. X]?
>
>MR. SCHMERLER: I will instruct you not to disclose anything which would reflect on conversations with counsel but otherwise you may answer that question.
>
>Q. You have no answer, you have no answer that's not privileged? Is that your response?
>
>MR. SCHMERLER: That's a legal question. What I've instructed him not to answer if it will reflect or tend to disclose privileged communications with counsel.

Hammer Dep. Tr. at 160:3-16.

These and other witnesses were also improperly instructed not to answer questions such as:

- "Is anyone paying the legal fees of your attorney?" Del Deo Dep. Tr. at 8:16-17.

- "When you heard from [an attorney] that the gallery was going to close abruptly, did you say *anything* to [the attorney]?" *Id.* at 27:19-21 (emphasis added).

- "When did the gallery's attorney tell you that the gallery was closing?" *Id.* at 16:25-17:1.

- "Did you speak with counsel about your decision to resign?" *Id.* at 27:14-15.

7

- "Do you know if Herrick conducted any interviews in connection with [its] investigation?" Hammer Dep. Tr. at 263:7-9.

- "Did you have an understanding as to what Knoedler's profits were in 2007?" Transcript of the Deposition of Howard Shaw, taken April 29, 2013 ("Shaw Dep. Tr."), at 74:21-22, Adelman Decl. at Exhibit K.

That the Rosales Collection works are fakes is now beyond any doubt. The world now knows not only that they are fakes, but that they were painted by Pei-Shen Qian, a Chinese immigrant living in Queens. Indeed, even defendant Ann Freedman now admits that the works are fake.[2] The defendants, however, will maintain that they are not liable to Howard and the other plaintiffs, and thus continue to enjoy the vast sums earned from the sale of fake art, because they acted, broadly speaking, in "good faith." In addition, Hammer will assert that his ownership of Knoedler was "hands-off" and thus that he had no personal knowledge of the sales of Rosales Collection works; notwithstanding the unequivocal testimony that he was fully informed contemporaneously of those sales. Transcript of the Deposition of Ann Freedman, taken May 6, 2013 ("Freedman Dep. Tr."), at 612:6-613:21, Adelman Decl. at Exhibit L; Shaw Dep. Tr. at 44:11-16.

The discovery obligations that Hammer and Knoedler have improperly evaded goes directly to the issues of good faith and the state of Hammer's knowledge. These evasive tactics have significantly prejudiced Plaintiff. Plaintiff was forced to conduct discovery on a truncated schedule, with inadequate time to review documents prior to depositions, challenge privilege logs, or make follow-up requests. Even more disturbingly, Plaintiff has been deprived of the opportunity to establish a complete evidentiary record by defendants' refusal to answer

---

[2] Her associated and newly minted claim that she was the "central victim" of transactions from which she reaped and has retained literally millions of dollars is so ludicrous that it requires no further comment. The extra-judicial comments by her attorney parroting the "central victim" line have as much credibility as his assertions in 2012 that Freedman was prepared to prove that the Rosales Collection was authentic.

8

deposition questions, deficient document production, and spoliation of evidence. As discussed further below, sanctions, including but not limited to preclusion of certain testimony, should be imposed to ensure that defendants do not profit from their misdeeds.

**ARGUMENT**

The Court has inherent power to "regulate litigation, preserve and protect the integrity of the proceedings before it, and sanction parties for abusive practices." *Rutgerswerke AG and Frendo S.p.A. v. Abex Corp*, No. 93 CIV 2914 JFK, 2002 WL 1203836, at *12 (S.D.N.Y. June 4, 2002). Pursuant to these powers, courts have imposed sanctions on parties for various types of misconduct in the discovery process, including spoliation, unexcused delay, and other obstructive behavior. *See, e.g.*, *Residential Funding Corp. v. De George Financial Corp.*, 306 F.3d 99 (2d Cir. 2002); *R.F.M.A.S., Inc. v. Mimi SO.*, 271 F.R.D. 13 (S.D.N.Y. 2010). Hammer and Knoedler have persistently abused the discovery process, to Plaintiff's detriment, and sanctions are necessary to even the playing field and maintain the integrity of the discovery process.

    **1.**    **Spoliation**

Spoliation is defined in this Circuit as "the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). As described above, Plaintiff is aware that Knoedler and Hammer have spoliated at least one document—an October 2009 list of Knoedler-owned inventory including key information about Rosales Collection works and their "not for sale" designations. Sanctions are warranted for spoliation of evidence when (1) the party against whom sanctions are sought had a duty to preserve the evidence; (2) the party willfully or negligently destroyed the evidence;

9

and (3) the evidence was relevant to the claim of the party seeking sanctions. *See Residential Funding Corp.*, 306 F.3d at 107; *In re Pfizer Inc. Secs. Litig.*, 288 F.R.D. 297, 313 (S.D.N.Y. 2013). All three prongs of the spoliation analysis are satisfied in the case of the missing document at issue here.

      First, Knoedler and Hammer had a duty to preserve documents related to the Rosales Collection in (and before) October 2009. The obligation to preserve documents is assumed by "anyone who anticipates being a party … to a lawsuit" and applies to all "evidence [that] may be relevant to future litigation." *Yu Chen v. LW Restaurant, Inc.*, No. 10 CV 200(ARR), 2011 WL 3420433, at *8 (E.D.N.Y. Aug. 3, 2011) (internal quotations and citations omitted). The October 20, 2009 memo stating that the pictures supplied by Rosales and Masaccio (another peddler of fake art) demonstrates beyond any doubt that Hammer and Knoedler were fully aware of the the circumstances they were facing. Moreover, when the missing list was created in October 2009, Knoedler had already received a grand jury subpoena related to the Rosales Collection works and was accordingly on notice of the issues from which the Complaint arises. *See* Hammer Dep. Tr. at 297:2-9. In addition, Knoedler's privilege log asserts work product privilege over documents dated as early as August 2009, indicating that defendants anticipated litigation regarding the claims raised in this lawsuit well before October of that year. *See* Knoedler Gallery, LLC Privilege Log, Adelman Decl. at Exhibit D; *see also* Fed. R. Evid. 502(g)(2) (work product is material "prepared in anticipation of litigation").

      Second, the destruction of the document was, at the very least, negligent. Knoedler's and Hammer's failure to uncover the document in any of the three places where it should have been maintained—Mr. Hammer's files; Knoedler's electronic files; and Mr. Del Deo's correspondence file—certainly raises questions as to whether the document was intentionally

destroyed, but it is clear that, at a minimum, defendants were negligent in failing to preserve the document given their duty to do so. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003) ("Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent."); *see also Harkabi v. SanDisk Corp.*, 275 F.R.D. 414, 419 (S.D.N.Y. 2010); *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 198-99 (S.D.N.Y. 2007). Indeed, Mr. Hammer openly admitted in his deposition that his policy was to shred or otherwise dispose of documents he received and that he was not aware of any changes in document retention policies following receipt of a grand jury subpoena in 2009. Hammer Dep. Tr. at 298:14-304:17. Thus, there may well be additional spoliated documents of which Plaintiff is currently unaware.

Third, the document is highly relevant to Plaintiff's claims. The document is described as listing key information about works from the same source as the forgery at the center of this litigation, including information about the designation of the works as "not for sale" in light of a federal investigation of their authenticity. *See* October 2009 Letter; Hammer Dep. Tr. at 297:2-9; Del Deo Dep. Tr. at 140:21-146:15. Its relevance can also be inferred from the "purposeful sluggishness" and "intentional delay" that defendants have displayed with respect to their document productions. *Short v. Manhattan Apartments, Inc.*, 286 F.R.D. 248, 254 (S.D.N.Y. 2012); *see also Residential Funding Corp.*, 306 F.3d at 113 ("a judge's finding that a party acted with gross negligence or bad faith with respect to discovery obligations is ordinarily sufficient to support a finding that the missing or destroyed evidence would have been harmful to that party").

As the Court may recall Knoedler, through defendant 8-31 Holdings, Inc. (also owned by Hammer) have broadly asserted attorney-client privilege and work-product protection to the materials produced as a result of the investigation conducted by Herrick Feinstein LLP of Knoedler's marketing and sale of Rosales Collection works. The basis for the assertion of work-

product protection concerning the investigation, which started on or about August 26, 2009, is that it was undertaken in anticipation of litigation over the sales of the fake Rosales Collection works. Knoedler and Hammer cannot in the same breath legitimately claim that it was permissible to destroy documents relevant to possible litigation at precisely the same time they had retained counsel to conduct an investigation concerning the facts underlying such possible litigation. But that is precisely what they must do to explain the destruction of the documents in question.

Under these circumstances, defendants should be sanctioned for spoliating evidence. The Court has wide discretion to fashion an appropriate sanction that will "serve the prophylactic, punitive and remedial rationales underlying the spoliation doctrine[.]" *Yu Chen*, 2011 WL 3420433, at *8. Plaintiff respectfully submits that in this case, the Court should preclude Knoedler and Hammer from offering evidence of their claimed good faith in connection with the sale and marketing of the Rosales Collection.[3] This is an appropriate remedy because the spoliated evidence goes to their state of knowledge about the fake art comprising the Rosales Collection.

### 2. Delayed and Deficient Document Production

Sanctions are similarly available when a party has not destroyed evidence, but has nonetheless failed to timely produce it. *See, e.g.*, *Residential Funding Corp.*, 306 F.3d at 112 ("District courts should not countenance 'purposeful sluggishness' in discovery on the part of parties or attorneys and should be prepared to impose sanctions when they encounter it.");

---

[3] It is certainly not surprising that Knoedler and Hammer engaged in the spoliation of evidence that would render them liable for the sale of fake art. They freely admit that they suppressed the fruits of the Herrick firm's investigation in order to keep purchasers like Howard in the dark about their potential claims, which, among other reasons, is why the limitations period for the warranty claims of the victimized purchasers should be tolled as a matter of law.

*Harkabi v. SanDisk Corp.*, 275 F.R.D. at 421 (imposing sanctions for unexcused delay in producing documents). In this case, Knoedler and Hammer have willfully delayed producing documents and privilege logs and failed completely to produce certain relevant documents that are known to Plaintiff—and possibly many more of which Plaintiff is unaware.

The delays in defendants' productions have resulted in significant prejudice to Plaintiff, which can only be corrected through sanctions. Even with defendants' full cooperation, Plaintiff would have been pressed to meet the expedited fact and expert discovery deadline set in this case. The delays manufactured by defendants further truncated the time available for Plaintiff to conduct discovery, while also forcing Plaintiff to divert resources to handle unnecessary discovery conflicts. These tactics rendered it all but impossible for Plaintiff to comprehensively explore key issues in the case, effectively probe witnesses at depositions, challenge unwarranted assertions of privilege, and establish a complete factual record.

Plaintiff has recently begun to uncover evidence that defendants' document productions were not only delayed, but deficient. The Shidler Letters are unquestionably relevant to this case and responsive to Plaintiff's document requests, but Plaintiff was never aware of their existence until they were produced by Mr. Shidler himself. The fact that the Shidler Letters were never produced despite the fact that at least some of them were in the possession of the same law firm representing Knoedler and Mr. Hammer in this litigation suggests that serious flaws may have plagued defendants' preservation, collection, and/or review of relevant documents. These types of deficiencies "stymie the search for the truth" and can only be remedied by imposing sanctions on defendants. *See Zubulake*, 220 F.R.D. at 214.

### 3. Refusal to Answer Questions at Depositions

The improprieties and delays that characterized document discovery in this case have been accompanied by similarly evasive tactics at depositions. Most notably, Knoedler and Hammer, through their counsel, have deprived Plaintiff of relevant information by improperly asserting the attorney-client privilege over information that is not protected by the privilege. This Court has the authority to impose sanctions on a party that has improperly asserted objections in order to obstruct a deposition. *See, e.g.*, *Morales v. Zondo, Inc.*, 204 F.R.D. 50 (S.D.N.Y. 2001); *Robbins & Myers, Inc.*, No. 01-CV-00201S(F), 2010 WL 2595332 (W.D.N.Y. June 24, 2010).

Knoedler is relying on a claim of good faith, and Hammer on a lack of knowledge, but are at the same time relying on attorney-client privilege to suppress disclosure of communications that go directly to these issues. As the Court in *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) held:

> The waiver may be found even if the privilege holder does not attempt to make use of a privileged communication; he may waive the privilege if he makes factual assertions the truth of which can only be assessed by examination of the privileged communication. *See, e.g.,* [*United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)] (criminal defendant's general assertion of good-faith defense waives attorney-client privilege to permit assessment whether his attorney had told him that his acts were illegal).

*See also Weizmann Inst. of Science v. Neschis*, No. 00 Civ. 7850 (RMB), 2004 WL 540480, *3 (S.D.N.Y. Mar. 17, 2004) ("Common examples of such waivers are when a defendant asserts an advice-of-counsel defense or a good-faith defense which places in issue whether his attorney made him aware that his acts were illegal or otherwise improper.") (citing *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003).

As described *supra* at pages 6-8 the depositions taken by Plaintiff were replete with unwarranted assertions of attorney-client privilege. For example:[4]

---

[4] This list is not complete. By necessity, if the Court grants this motion, the depositions at which

- Witnesses were instructed not to answer questions regarding the dates of and persons in attendance at meetings where counsel was present. *See, e.g.*, Del Deo Dep. Tr. at 36:20-37:14.; *id.* at 16:25-17:1; Hammer Dep. Tr. at 160:3-16. Such instructions are contrary to well-settled law. *See, e.g.*, *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 467 (2d Cir. 1989); *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 783 (S.D.N.Y. 2010) ("the party seeking disclosure … is entitled to discover the dates and places of and the identities of the participants in the [privileged] communications [and] the identities of others who were present and to whom the communications were disclosed.]").

- Witnesses were instructed not to answer questions regarding payment of their attorney's fees. *See, e.g.*, Del Deo Dep. Tr. at 8:16-17. Such instructions are contrary to well-settled law. *See, e.g.*, *In re Grand Jury Subpoena*, 781 F.2d 238, 247-48 (2d Cir. 1985) ("We consistently have held that, absent special circumstances, client identity and fee information are not privileged. … [I]nformation that fees were paid either by other clients or by third persons may be sought to determine the identity of a benefactor").

- Witnesses were instructed not to answer questions regarding the general subject matter of communications with counsel. *See, e.g.*, Del Deo Dep. Tr. at 27:14-15; *id.* at 27:19-21. Such instructions are contrary to well-settled law. *See, e.g.*, *Chevron Corp.*, 736 F. Supp. 2d at 783 ("the party seeking disclosure … is entitled to discover … the general subject matter (but not the content) of [privileged] communications.").

- Witnesses were instructed not to answer questions regarding factual information that may have come up in discussions with attorneys but which would not disclose the content of any legal advice or other privileged material. *See, e.g.*, Hammer Dep. Tr. at 263:7-9; Shaw Dep. Tr. at 74:21-22. Such instructions are contrary to well-settled law. *See, e.g.*, *Standard Chartered Bank PLC v. Ayala Int'l Holdings (U.S.) Inc.*, 111 F.R.D. 76, 79-80 (S.D.N.Y. 1986) ("The privilege protects *communications* between the client and his attorney; it does not protect *facts* which the client communicates to the attorney … Similarly, the privilege does not protect facts which an attorney obtains from independent sources and then conveys to his client.").

These incidents illustrate the strategy of Hammer's and Knoedler's counsel in this case thus far, which has been to deny Plaintiffs relevant information and the time to analyze that information rather than allowing a full record to develop so that the case can be decided on its merits. The cumulative effect of their myriad implementations of this strategy has been significant prejudice to Plaintiff. Sanctions are necessary to remediate the prejudice and to deter them from continuing to engage in this type of conduct. *See, e.g.*, *R.F.M.A.S.*, 271 F.R.D. at 22,

---

counsel to Hammer and Knoedler improperly invoked the privilege (including Hammer, Del Deo and Shaw) will have to be reopened.

24 (Court has discretion to impose any sanction that will serve the purposes of deterrence and remediation; sanctions are appropriate for "sustained uncooperative conduct during discovery, even if no single act … would, on its own, warrant sanctions.").

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff the relief requested in his motion, including but not limited to the costs associated with bringing the motion.

Dated:   New York, New York
         August 30, 2013

**CAHILL PARTNERS LLP**

     s/John R. Cahill
John R. Cahill
Ronald W. Adelman
70 West 40th Street
New York, New York 10018
(212) 719-4400

*Attorneys for Plaintiff*
*John D. Howard*

16