UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

JOHN D. HOWARD,                      :
individually and as assignee
of Jaime Frankfurt LLC,              :

                                              12 Civ. 5263 (PGG)(HBP)
              Plaintiff,             :

                                              REPORT
    -against-                        :        AND RECOMMENDATION

ANN FREEDMAN, GLAFIRA ROSALES        :
KNOEDLER GALLERY, LLC, d/b/a
KNOEDLER & COMPANY, MICHAEL,         :
HAMMER, 8-31 HOLDINGS, INC.,
JOSE CARLOS BERGANTINOS DIAZ,        :
and JAIME ANDRADE,

                                     :
              Defendants.
                                     :

----------------------------------X

          PITMAN, United States Magistrate Judge:


          TO THE HONORABLE PAUL G. GARDEPHE, United States

District Judge,


I.  Introduction


          In this action, plaintiff John D. Howard claims that a

painting that he purchased from defendant Knoedler Gallery, LLC

("Knoedler") for $3.5 million on the representation that it was

created by Willem de Kooning is a forgery.

          The claims against all of the defendants have been

resolved except for defendants Glafira Rosales and Jose Carlos

Bergantinos Diaz.  The Honorable Paul G. Gardephe, United States District Judge, granted defendant Jaime Andrade's motion for summary judgment dismissing all claims against him.  De Sole v. Knoedler Gallery, LLC, 139 F. Supp. 3d 618, 657-59, 664-65 (S.D.N.Y. 2015) (Gardephe, D.J.); Order, dated Sept. 30, 2015 (Docket Item ("D.I.") 320).  Plaintiff settled his claims against defendants Freedman, Knoedler, 8-31 Holdings, Inc., and Michael Hammer (D.I. 392).

Plaintiff asserts the following claims against Rosales and Diaz: (1) violations of the United States Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and 18 U.S.C. § 1962(d) ("Civil RICO violations"), (2) aiding and abetting fraud and (3) conspiracy to commit fraud (Amended Complaint, dated October 21, 2013 (D.I. 179) ("Am. Compl.") ¶¶ 259-306, 334-53).  Although Rosales and Diaz appeared in this action and filed motions to dismiss plaintiff's Complaint,[1] they failed to answer or move with respect to the Amended Complaint. Accordingly, Judge Gardephe entered defaults against each of these defendants (Order, dated January 31, 2014 (D.I. 224); Order, dated February 11, 2014 (D.I. 228)).

---

[1]Judge Gardephe granted Rosales' motion to dismiss in part and granted Diaz's motion with leave serve an amended complaint. See De Sole v. Knoedler Gallery, LLC, 974 F. Supp. 2d 274, 321 (S.D.N.Y. 2013).

This matter was referred to me to conduct an inquest concerning plaintiff's entitlement to damages from the defaulting defendants (Order of Reference, dated January 31, 2014 (D.I. 223); Order, dated February 11, 2014 (D.I. 228)).  I directed plaintiff to serve and file his proposed findings of fact and conclusions of law by April 18, 2014 and directed defendants Rosales and Diaz to submit responsive materials by May 19, 2014. The Scheduling Orders issued provided as to each defendant:

> IF DEFENDANT (1) FAILS TO RESPOND TO PLAINTIFF'S SUB-
> MISSIONS, OR (2) FAILS TO CONTACT MY CHAMBERS BY [MAY
> 19, 2014] AND REQUEST AN IN-COURT HEARING, IT IS MY
> INTENTION TO ISSUE A REPORT AND RECOMMENDATION CONCERN-
> ING DAMAGES ON THE BASIS OF PLAINTIFF'S WRITTEN SUBMIS-
> SIONS ALONE WITHOUT AN IN-COURT HEARING.  See Transat-
> lantic Marine Claims Agency, Inc. v. Ace Shipping
> Corp., 109 F.3d 105, 111 (2d Cir. 1997); Fustok v.
> ContiCommodity Services Inc., 873 F.2d 38, 40 (2d Cir.
> 1989) ("[I]t [is] not necessary for the District Court
> to hold a hearing, as long as it ensured that there was
> a basis for the damages specified in a default judg-
> ment.")

(Scheduling Order, dated Feb. 7, 2014 (D.I. 227) (emphasis in original); Scheduling Order, dated Feb. 20, 2014 (D.I. 229) (emphasis in original); Endorsed Letter, dated March 25, 2014 (D.I. 237)).

Defaulting defendants did not make any written submis-
sion to me, nor have they contacted my chambers in any way. Accordingly, I make the following findings of fact and conclu-

sions of law as to the defaulting defendants on the basis of
plaintiff's written submissions alone.[2]

II.  Findings of Fact

1.  Plaintiff resides in New York, New York and brings
this action in his individual capacity and as assignee of Jaime
Frankfurt LLC (Am. Compl.[3] ¶¶ 28, 380).

2.  Defendant Rosales is an individual residing in
Sands Point, New York (Am. Compl. ¶ 30).

3.  Defendant Diaz is an individual who is currently in
Spain, awaiting extradition to the United States.  See Eileen
Kinsella, Accused Knoedler Forgery Mastermind Gets Postponement
for Extradition From Spain, artnet news (May 13, 2016),

---

[2]Before they settled their claims, non-defaulting defendants
Knoedler, 8-31 Holdings, Inc., Hammer and Freedman objected to
the inquest as premature and requested that the inquest be
deferred until there was a resolution of liability and damages of
the overlapping claims against them.  See Non-Defaulting Defen-
dants' Opposition to Inquest on Claims Against Defaulting Defen-
dants, dated Apr. 22, 2014 (D.I. 243).  Because these defendants
have since settled with plaintiff, their request to defer the
inquest is moot.

[3]As a result of the default, all of the allegations of the
Amended Complaint, except as to the amount of damages, must be
taken as true as against the defaulting defendants.  Greathouse
v. JHS Sec. Inc., 784 F.3d 105, 107 (2d Cir. 2015); Greyhound
Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158-59
(2d Cir. 1992); Trans World Airlines, Inc. v. Hughes, 449 F.2d
51, 69-70 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363
(1973).

https://news.artnet.com/market/knoedler-fraudster-bergantinos-diaz-extradition-496316.  Diaz's whereabouts were unknown to plaintiffs when the Amended Complaint was drafted (Am. Compl. ¶ 36).

4.   Defendant Knoedler is a Delaware limited liability company with its principal place of business located, according to the New York Secretary of State, in New York, New York (Am. Compl. ¶ 31).

5.   Defendant 8-31 Holdings, Inc. is a Delaware corporation with its principal place of business located, according to the New York Secretary of State, in New York, New York (Am. Compl. ¶ 32).

6.   Defendant Michael Hammer is an individual residing in California (Am. Compl. ¶ 35).

7.   Defendant Ann Freedman is an individual residing in New York, New York (Am. Compl. ¶ 29).

8.   Defendant Jaime Andrade is an individual residing in New York, New York (Am. Compl. ¶ 37).

9.   Between approximately 1994 and 2009, Rosales and Diaz supplied dozens of forged artworks to Knoedler to be re-sold by the gallery as genuine works by leading abstract expressionist artists ("the Works") (Am. Compl. ¶¶ 42-137).

10.  Each of the forged Works Rosales and Diaz supplied to Knoedler was created by a forger residing in Queens, New York,

and not by the various artists to whom the Works were attributed (Am. Compl. ¶¶ 11, 42-44).

11.   Diaz found the forger selling paintings on the street, enrolled him in the scheme and gave specific directions for the forger to paint works that appeared to be by leading abstract expressionist artists (Am. Compl. ¶¶ 42-44).

12.   Diaz paid the forger several thousand dollars for each forged Work (Am. Compl. ¶ 43).

13.   Diaz personally "aged" the forged Works he received from the forger in order for them to appear older than they were -- for example, by "heating them, cooling them, and exposing them to the elements outdoors" (Am. Compl. ¶ 43).

14.   Diaz gave the Works to Rosales who then provided the forged Works to Knoedler and other galleries for re-sale; Diaz and Rosales knew that these artworks were forgeries and that they would be re-sold as authentic works (Am. Compl. ¶¶ 1, 12, 43-44, 46, 67).

15.   Rosales and Diaz maintained a corrupt agreement in which they knowingly misrepresented the provenance[4] of the Works

---

[4]"Provenance" refers to "the history of ownership of a valued object or work of art or literature." De Sole v. Knoedler Gallery, LLC, supra, 139 F. Supp. 3d at 628 n.12, quoting Merriam Webster, http://www.merriam-webster.com/dictionary/provenance (last visited October 6, 2015).

for the purpose of selling the forged Works as authentic (Am. Compl. ¶¶ 1-4, 11-12, 23, 42-44, 67-68, 114-15, 185-86).

16.   The numerous victims of the scheme who purchased the fraudulent works from Knoedler, including plaintiff, were told, <u>inter alia</u>, that the Works were authentic paintings by the artists to whom they were attributed, and that the Works had an established provenance and were sold directly from the artists in the 1950s and 1960s to an anonymous collector (Am. Compl. ¶¶ 1-4, 67-68, 149, 151, 153, 184-96, 210-11, 292).

17.   Rosales falsely represented to Freedman, Knoedler's president, that when she was a child in Mexico she met a husband and wife who were European Jewish emigrés.  According to her story, the husband traveled frequently to the United States between the 1940s and the 1970s, and, on those trips, he bought a number of artworks from famous abstract expressionist artists, including Mark Rothko and Jackson Pollock.  The couple died in the early 1990s and the Works were bequeathed to their children who were not interested in art, wished to remain strictly anonymous and wanted to sell the artworks (Am. Compl. ¶¶ 2, 67-72, 246).

18.   These statements were false: the Works were forgeries created in Queens in the 1990s and 2000s (Am. Compl. ¶¶ 1-2, 4, 42-43).

19.   In February 2007, plaintiff visited an art fair at the New York Armory on Park Avenue where Frankfurt[5] introduced plaintiff to Freedman (Am. Compl. ¶¶ 138-44).  Freedman, as a representative of Knoedler, showed plaintiff a painting that she represented to be a landscape painting by abstract expressionist artist William de Kooning that was in fact a forgery obtained from Rosales and Diaz (Am. Compl. ¶¶ 2, 140-46, 149, 155, 160, 162, 171, 177, 195, 211) (the "Fake de Kooning").  Plaintiff viewed the Fake de Kooning again at Knoedler's gallery, and later, Knoedler delivered the Fake de Kooning to one of plain- tiff's residences so he could "live with it" before deciding whether to purchase it (Am. Compl. ¶¶ 147, 157).

20.   Freedman and Knoedler represented to plaintiff that the Fake de Kooning was "being sold by the son of a Swiss collector who wished to remain private," (Am. Compl. ¶ 2), and that "provenance of the work was above reproach" (Am. Compl. ¶ 149).

21.   On June 11, 2007, two days before Knoedler sold the Fake de Kooning to plaintiff, Knoedler purchased the Fake de Kooning from Rosales and Diaz for $750,000 (Am. Compl. ¶¶ 177-82;

---

[5]The Amended Complaint does not provide a first name for Frankfurt, but implies that this individual was the principal of Jaime Frankfurt LLC (see, e.g., Am. Compl. ¶ 172 (referring to "Frankfurt (operating through Jaime Frankfurt, LLC)").

Plaintiff's Proposed Findings of Fact and Conclusions of Law, dated April 18, 2014 (D.I. 242) ("Pl. Proposed FFCL"), Ex. D).

22.  In June 2007, in reliance upon the misrepresentations regarding the false provenance created by defendants, plaintiff decided to purchase the Fake de Kooning, negotiated a purchase price of $4 million with Freedman and requested Frankfurt's assistance in completing the purchase (Am. Compl. ¶¶ 159-61).

23.  On or about June 13, 2007, plaintiff wired $4 million to Frankfurt's Citibank account in Los Angeles, California through the use of interstate wires; Frankfurt then wired $3.5 million from his Citibank account to Knoedler's HSBC Bank account in New York, New York (Am. Compl. ¶¶ 169, 282(f), 282(g); Pl. Proposed FFCL, Ex. C).

24.  Frankfurt denies any wrongdoing and has paid plaintiff $500,000 "because, as he has represented, he believes that it is right to have done so" (Am. Compl. ¶ 165).

25.  The Fake de Kooning currently has no commercial value (Am. Compl. ¶¶ 210-11, 294; Pl. Proposed FFCL, Ex. E, attaching Declaration of Elin Lake-Ewald, Ph.D., ASA, FRICS, dated April 16, 2014, ¶ 2 (stating that in her expert opinion as an art appraiser, the Fake de Kooning has no commercial value and attaching expert report)).

26.   On September 16, 2013, Rosales pled guilty to criminal charges of mail and wire fraud based on many of the same acts that are alleged in the Amended Complaint, including that she sold forged works of art that she represented were by famous abstract expressionist artists to Knoedler and others from the 1990s through 2009 (see United States v. Glafira Rosales, No. 13-cr-00518 (KPF), Transcript of Proceedings dated Sept. 16, 2013, Docket Item 23 (S.D.N.Y.)("Rosales Guilty Plea Allocution"); Pl. Proposed FFCL, Ex. A, attaching United States v. Glafira Rosales, No. 13-cr-00518 (KPF), Plea Agreement for Glafira Rosales, dated Sept. 10, 2013 (S.D.N.Y.)).

27.   In her guilty plea, Rosales admitted to creating false provenances for the Works, the counterfeit nature of the Works as well as the Works' fabrication and conveyance to Knoedler (Rosales Guilty Plea Allocution, pp. 26-30).

28.   The Superseding Indictment against Rosales de-scribes Diaz as Rosales' "boyfriend," identifies him as "Co-Conspirator 1" and alleges, among other things, that he knowingly sold forged works of art to purchasers based on the misrepresentation that they were painted by famous abstract expressionist artists (Pl. Proposed FFCL, Ex. B, attaching United States v. Glafira Rosales, No. 13-cr-00518 (KPF), Superseding

Indictment dated Aug. 14, 2013, Docket Item 14 (S.D.N.Y.), ¶ 2);
Am. Compl. ¶¶ 1, 12, 14, 23, 46-47).

III.  Conclusions of Law

    A.  Jurisdiction and Venue

        29.  This Court has federal question jurisdiction over
this action pursuant to the federal racketeering statute, 18
U.S.C. § 1964(c) and supplemental jurisdiction under 28 U.S.C. §
1367.

        30.  Defendants Rosales and Diaz have each made an
appearance in this action and have not asserted defenses based on
either lack of personal jurisdiction or improper venue (see,
e.g., Docket Items 74, 76).  Accordingly, these defenses have
been waived.  Fed. R. Civ. P. 12(h).

    B.  Determination of Liability and Damages

        1.  Standards Governing Default Motions

        31.  "'[W]hile a party's default is deemed to consti-
tute a concession of all well pleaded allegations of liability,
it is not considered an admission of damages.'"  Renaissance
Search Partners v. Renaissance Ltd. LLC, 12 Civ. 5638 (DLC), 2014
WL 4928945 at *4 (S.D.N.Y. Oct. 1, 2014) (Cote, D.J.), quoting

Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012).

32.   Therefore, even where, as here, defendants have defaulted, the court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).

33.   To determine damages, a court may rely on detailed affidavits and documentary evidence in lieu of an evidentiary hearing. Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991); see Fed.R.Civ.P. 55(b)(2)(B) ("The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." (emphasis added)); accord Trustees of Mason Tenders District Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Stevenson Contracting Corp., 05 Civ. 5546 (GBD)(DF), 2008 WL 3155122 at *4 (S.D.N.Y. June 19, 2008) (Freeman, M.J.) (Report & Recommendation), adopted, 2008 WL 2940517 (S.D.N.Y. July 29, 2008) (Daniels, D.J.).

34.   Fed.R.Civ.P. 54(c) limits the relief that can be awarded by a default judgment to the relief demanded in the claimant's pleading.  Specifically, Rule 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in

amount, what is demanded in the pleadings." <u>See also</u> <u>Silge v.</u>
<u>Merz</u>, 510 F.3d 157, 159 (2d Cir. 2007); 10 Charles A. Wright,
Arthur R. Miller, & Mary K. Kane, <u>Federal Practice & Procedure</u> §
2663 (4th ed. 2014).

35.  Accordingly, and in light of defendants' default,
I rely on the statements and evidence contained in plaintiff's
proposed findings of fact and conclusions of law and other
submissions regarding the amount he paid for the Fake de Kooning
and its current value and deem such evidence, except where it is
internally inconsistent, to be correct.

2.  <u>Civil RICO Claims</u>

36.  The elements of a private claim under RICO are:
"(1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury
to the plaintiff's business or property, and (3) causation of the
injury by the defendant's violation." <u>De Sole v. Knoedler</u>
<u>Gallery, LLC</u>, <u>supra</u>, 974 F. Supp. 2d at 299 (internal quotation
marks and citation omitted).

37.  The elements of a claim for a substantive RICO
violation under Section 1962(c) are met when "(1) the defendant
(2) through the commission of two or more acts (3) constituting a
pattern (4) of racketeering activity (5) directly or indirectly
invests in, or maintains an interest in, or participates in (6)

an enterprise (7) the activities of which affect interstate or foreign commerce." De Sole v. Knoedler Gallery, LLC, supra, 974 F. Supp. 2d at 299 (internal quotation marks and citation omitted).

38.   Rosales and Diaz are liable to plaintiff for violating 18 U.S.C. § 1962(c) (Am. Compl. ¶¶ 259-95).   Rosales and Diaz participated in an enterprise consisting of an association-in-fact for the purpose of marketing and selling the forged Works by misrepresenting them to have been created by famous artists rather than forgeries (Am. Compl. ¶¶ 42-46, 67-68, 260-64, 270, 282-83, 300, 331, 340, 346-53).   Rosales and Diaz committed numerous overt acts, including mail and wire fraud, in furtherance of the enterprise, constituting a pattern of racketeering activity affecting interstate and foreign commerce (Am. Compl. ¶¶ 42-46, 67-68, 180-82, 260-64, 270, 282-83, 331, 340, 346-53).   Rosales and Diaz's unlawful acts were essential elements in the chain of circumstances leading to plaintiff's purchase of the Fake de Kooning (Am. Compl. ¶¶ 12, 21, 42-46, 67-68, 210-11, 300).

39.   In addition, 18 U.S.C. § 1962(d) "prohibits any person from conspiring to violate any of the substantive provisions of subsections § 1962(a)-(c)." De Sole v. Knoedler Gallery, LLC, supra, 974 F. Supp. 2d at 310-11.   "Assuming that a

14

RICO enterprise exists, [in order to prove an individual is liable on a conspiracy theory, one] must prove only that the defendants . . . know the general nature of the conspiracy and that the conspiracy extends beyond [their] individual roles." De Sole v. Knoedler Gallery, LLC, supra, 974 F. Supp. 2d at 311, quoting United States v. Zichettello, 208 F.3d 72, 99 (2d Cir. 2000).

      40.  Rosales and Diaz were aware of the nature of the conspiracy with the other defendants to sell the forged Works and are liable for a RICO conspiracy in violation of 18 U.S.C. § 1962(d) (Am. Compl. ¶¶ 12, 296-306, 340, 348).

      41.  A Civil RICO plaintiff is also required to show that a RICO predicate offense "not only was a 'but for' cause of his injury, but was the proximate cause as well." De Sole v. Knoedler Gallery, LLC, supra, 974 F. Supp. 2d at 310 (internal quotation marks and citation omitted).

      42.  Plaintiff has established the causation element of a Civil RICO claim because "Howard purchased what was represented to be an authentic de Kooning for $4 million, but that painting . . . was determined to be a forgery" and thus "[plaintiff] suffered injury arising out of the acts of the . . . racketeering enterprise." De Sole v. Knoedler Gallery, LLC, supra, 974 F. Supp. 2d at 310; Am. Compl. ¶¶ 2, 9-10, 331.

43.   Plaintiff's loss is $3.5 million because, as a
result of the alleged fraudulent scheme, he paid $3.5 million for
the Fake de Kooning and today it has no value (Am. Compl. ¶¶ 2,
9-10, 165, 169, 210, 282, 331; Pl. Proposed FFCL, Ex. E, attach-
ing Declaration of Elin Lake-Ewald, Ph.D., ASA, FRICS, dated
April 16, 2014, ¶ 2).

44.   Plaintiff's $3.5 million loss is supported with
reasonable certainty by the invoices reflecting the transaction,
which are attached to plaintiff's moving papers (Pl. Proposed
FFCL, Ex. C).   The documentation shows that Frankfurt sent
plaintiff an invoice for $4 million for the Fake de Kooning with
instructions on how to wire the payment to Frankfurt's Citibank
account in Los Angeles, California (Am. Compl. ¶ 169; Pl. Pro-
posed FFCL Ex. C).   The documents also show that on June 13,
2007, Knoedler sent Frankfurt an invoice for $3.5 million for the
Fake de Kooning with instructions on how to wire the payment to
Knoedler's HSBC account in New York (Am. Compl. ¶¶ 159-61; Pl.
Proposed FFCL Ex. C).   As noted above, although plaintiff wired
Frankfurt $4 million to purchase the Fake de Kooning and Frank-
furt wired Knoedler $3.5 million to complete the purchase,
Frankfurt later returned $500,000 to plaintiff and assigned his
claims arising out of the sale of the Fake de Kooning to plain-
tiff (Am. Compl. ¶¶ 165, 282(f), 282(g)).

16

45.   Rosales and Diaz should be held jointly and severally liable to plaintiff for their Civil RICO violations.

> Although the Second Circuit has not specifically addressed the issue of joint and several liability in civil RICO cases, it has allowed joint and several liability in a criminal RICO case, see United States v. Fruchter, 411 F.3d 377, 384 (2d Cir. 2005), and many district courts in this Circuit routinely find defendants jointly and severally liable in relation to civil RICO claims.

Allstate Ins. Co. v. Nazarov, 11 CV 6187 (PKC)(VMS), 2015 WL 5774459 at *17 (E.D.N.Y. Sept. 30, 2015) (citations omitted); accord Govt. Employees Ins. Co. v. Simakovsky, 14 CIV. 3775 (KAM) (SMG), 2015 WL 5821407 at *11 (E.D.N.Y. Oct. 5, 2015); Allstate Ins. Co. v. Kumar, 10 Civ. 8166 (KBF)(RLE), 2013 WL 2395748 at *3 (S.D.N.Y. June 3, 2013) (Ellis, D.J.) (Report & Recommendation), adopted, Order & Judgment (S.D.N.Y. Aug. 12, 2013) (Forrest, D.J.); City of New York v. Pollack, 03 Civ. 0253 (PAC), 2006 WL 522462 at *17 (S.D.N.Y. Mar. 3, 2006) (Crotty, D.J.).  Rosales and Diaz acted jointly in furtherance of the civil RICO violations and therefore should be held jointly and severally liable.

46.   18 U.S.C. § 1964(c) provides for "threefold" damages as a penalty for a violations of 18 U.S.C. § 1962.[6]

---

[6]18 U.S.C. § 1964(c) also provides for costs and reasonable attorney's fees; plaintiff has indicated that because the action is ongoing he will seek such costs and fees at a later date (Pl. Proposed FFCL at 9 n.5).

47.   The Amended Complaint states that plaintiff is seeking compensatory damages of "no less than $3.5 million, plus interest" and "treble damages under 18 U.S.C. §1962(c) and (d)" (Am. Compl. ¶ 391), thereby putting defendants on notice that at least this amount was at stake.   See Fed. R. Civ. P. 54(c).

48.   I, therefore, recommend that, as damages for their Civil RICO violations, Rosales and Diaz be held jointly and severally liable to plaintiff for treble damages totaling $10.5 million under 18 U.S.C. § 1964(c) and (d).

3.   <u>Aiding and Abetting Fraud
and Conspiracy to Commit Fraud</u>

49.   The elements of a claim for aiding and abetting fraud in New York[7] are (1) the existence of a fraud, (2) defendant's knowledge of the fraud and (3) defendant's substantial assistance to advance the fraud's commission.   <u>See IMG Fragrance Brands, LLC v. Houbigant, Inc.</u>, 759 F. Supp. 2d 363, 383 (S.D.N.Y. 2010) (Preska, D.J.); <u>see also</u> <u>Chambers v. Weinstein</u>, 135 A.D.3d 450, 450, 21 N.Y.S.3d 892, 893 (1st Dep't 2016); <u>Oster v. Kirschner</u>, 77 A.D.3d 51, 55, 905 N.Y.S.2d 69, 72 (1st Dep't 2010).

---

[7]All parties agree that New York law applies to plaintiff's fraud claims.   <u>See</u> <u>De Sole v. Knoedler Gallery, LLC</u>, <u>supra</u>, 974 F. Supp. 2d at 295 n.7, <u>citing</u> D.I. 40 at 15 <u>and</u> D.I. 42 at 22.

50.   "To plead a claim for fraud in New York, a plaintiff must establish, (1) a material, false representation; (2) an intent to defraud thereby; (3) reasonable reliance on the representation; (4) damage to the plaintiff; and (5) actual and proximate causation."  IMG Fragrance Brands, LLC v. Houbigant, Inc., supra, 759 F. Supp. 2d at 383.

51.   "New York does not recognize an independent tort of conspiracy."  Kirch v. Liberty Media Corp., 449 F.3d 388, 401 (2d Cir. 2006), citing Alexander & Alexander, Inc. v. Fritzen, 68 N.Y.2d 968, 969, 503 N.E.2d 102, 102, 510 N.Y.S.2d 546, 547 (1986).  "All that an allegation of conspiracy can accomplish is to connect non-actors, who otherwise might escape liability, with the acts of their coconspirators."  IMG Fragrance Brands, LLC v. Houbigant, Inc., supra, 759 F. Supp. 2d at 386.

52.   In addition to demonstrating the existence of the underlying fraud, a claim for civil conspiracy to defraud requires a showing of

> (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a common purpose or plan; and, (4) resulting damage or injury.  See Meisel v. Grunberg, 651 F. Supp. 2d 98, 119 (S.D.N.Y. 2009).  In other words, Plaintiffs must establish facts which "support an inference that defendants knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious purpose."  Snyder v. Puente De Brooklyn Realty Corp., 297 A.D.2d 432, 746 N.Y.S.2d 517, 521 (2002).

19

IMG Fragrance Brands, LLC v. Houbigant, Inc., supra, 759 F. Supp. 2d at 386.

     53.   Rosales and Diaz are liable for aiding and abetting fraud and for conspiring to commit fraud.  As discussed above at ¶¶ 38, 40, 42 with respect to plaintiff's Civil RICO claims, there is evidence that Rosales and Diaz entered into a fraudulent agreement to acquire and sell forged paintings that they misrepresented to be by famous abstract expressionist artists, that plaintiff purchased one of these forged paintings in reliance on misrepresentations about its true source and value and that plaintiff suffered damages as a result (Am. Compl. ¶¶ 42-44, 67-68, 149-51, 160, 317, 342).

     54.   Rosales and Diaz were aware of the fraud, agreed to participate in it, and provided substantial assistance to advance the fraud (Am. Compl. ¶¶ 334-53).  Rosales provided the forged Works including the Fake de Kooning to Knoedler and participated in the creation of a false provenance for Works (Am. Compl. ¶¶ 4-5, 9, 11-13, 17, 23-24, 42-44, 48, 67-68, 71, 81, 346-53).  Diaz procured and paid the forger, personally made the Works looked "aged" and "authentic" and provided the Works to Rosales for sale (Am. Compl. ¶¶ 4-5, 9, 11-13, 17, 23-24, 42-44, 48, 67-68, 71, 81, 346-53).  Diaz and Rosales received payments

for the Works in cash, check and via a bank account in Spain (Am. Compl. ¶¶ 179-82, 196).

55.  Plaintiff suffered damages as a result of the fraudulent scheme (Am. Compl. ¶¶ 342-43; see also above, ¶¶ 42-44).

56.  Rosales and Diaz acted jointly in furtherance of the fraudulent scheme (Am. Compl. ¶¶ 10-12, 23, 42-44, 46).

57.  The appropriate measure of damages for these fraud-based claims is "the actual pecuniary loss sustained as the direct result of the wrong or what is known as the 'out-of-pocket' rule, pursuant to which "the loss is computed by ascertaining the difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain." Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421, 668 N.E.2d 1370, 1373, 646 N.Y.S.2d 76, 80 (1996) (internal quotation marks and citations omitted); accord Continental Cas. Co. v. Pricewaterhouse Coopers, LLP, 15 N.Y.3d 264, 271, 933 N.E.2d 738, 742, 907 N.Y.S.2d 139, 143 (2010).

58.  "Under New York law, where[, as is the case here,] defendants acted jointly and/or concurrently to produce a single injury, those defendants must be held jointly and severally liable for all of the harm resulting from their actions."  See

21

Gov't Employees Ins. Co. v. Infinity Health Prods., Ltd ., No. 10
Civ. 5611 (JG)(JMA), 2012 WL 1427796 at *10 (E.D.N.Y. Apr. 6,
2012) (Report & Recommendation), adopted, 2012 WL 1432213
(E.D.N.Y. Apr. 25, 2012); see also Hecht v. City of New York, 60
N.Y.2d 57, 62, 454 N.E.2d 527, 530, 467 N.Y.S.2d 187, 190 (1983);
accord Gov't Employees Ins. Co. v. IAV Med. Supply, Inc., No. 11
Civ. 4261 (ARR)(RER), 2013 WL 764735 at *9 (E.D.N.Y. Feb. 8,
2013) (Report & Recommendation), adopted, No. 11 Civ. 4261
(ARR)(RER), 2013 WL 765190 (E.D.N.Y. Feb. 28, 2013)); Bank of
China v. Sub-Zero, Inc., 02 Civ. 4457 (RMB)(AJP), 2005 WL 1149780
at *2 (S.D.N.Y. May 16, 2005) (Peck, M.J.) (Report & Recommenda-
tion), adopted, 2005 WL 1388855 (S.D.N.Y. June 9, 2005) (Berman,
D.J.).

     59. Plaintiff suffered an out-of-pocket loss of $3.5
million as a direct result of the fraudulent scheme in which
Rosales and Diaz participated (Am. Compl. ¶¶ 210-11; see also,
above, ¶¶ 43-44).

     60. The Amended Complaint clearly states that plain-
tiff is seeking compensatory damages of "no less than $3.5
million, plus interest" (Am. Compl. ¶ 391), thereby putting
defendants on notice that at least this amount was at stake in
this action. See Fed.R.Civ.P. 54(c).

61.   Plaintiff is entitled to $3.5 million in damages on his fraud claims.[8]

4.   PreJudgment Interest

62.   The recoverability of prejudgment interest is governed by New York law.  See Baker v. Dorfman, 239 F.3d 415, 425 (2d Cir. 2000); Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999).

63.   "Under New York law, awarding prejudgment interest on damages awarded for fraud is mandatory."  Barkley v. United Homes, LLC, 848 F. Supp. 2d 248, 269 (E.D.N.Y. 2012), aff'd sub nom., Barkley v. Olympia Mortg. Co., 557 F. App'x 22 (2d Cir. 2014) (summary order); see also N.Y.C.P.L.R. § 5001(a); Mallis v. Bankers Trust Co., 717 F.2d 683, 694 (2d Cir. 1983); Govt. Employees Ins. Co. v. Badia, supra, 2015 WL 1258218 at *25; Huang v. Sy, 62 A.D.3d 660, 661, 878 N.Y.S.2d 398, 400 (2d Dep't 2009).

64.   In the Amended Complaint, plaintiff seeks an award of "no less than $3.5 million, plus interest" (Am. Compl. ¶ 391).

---

[8]Plaintiff is not entitled to recover $3.5 million on his common law fraud claims in addition to his Civil RICO recovery -- such a recovery would be duplicative of his overlapping Civil RICO damage recovery.  See Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1106 (2d Cir. 1988); Govt. Employees Ins. Co. v. Badia, 13-CV-1720 (CBA)(VMS), 2015 WL 1258218 at *24 (E.D.N.Y. Mar. 18, 2015).

This is sufficient to put defendants on notice that plaintiff was seeking prejudgment interest. See DLJ Mortg. Capital, Inc. v. E. Am. Mortg. Co., 07 Civ. 7933 (PKL)(DFE), 2009 WL 1835025 at *5 (S.D.N.Y. June 24, 2009) (Leisure, D.J.) (complaint "gave . . . adequate notice under Rule 54(c) that default judgment would lead to 9% prejudgment interest" where, inter alia, it demanded an identified amount "plus penalties and interest").

    65.  New York law provides for prejudgment interest at a rate of 9% per annum for fraud-based claims.  N.Y.C.P.L.R §§ 5001(a), 5004; Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991); Barkley v. United Homes, LLC, supra, 848 F. Supp. 2d at 269.

    66.  Prejudgment interest "is to be computed from 'the earliest ascertainable date the cause of action existed.'"  Bison Capital Corp. v. ATP Oil & Gas Corp., 884 F. Supp. 2d 57, 59 (S.D.N.Y. 2012) (Stein, D.J.), quoting N.Y. C.P.L.R. § 5001(b).

    67.  Plaintiff's fraud-based claims "existed" on June 13, 2007 when he paid for the forged Work based on the misrepresentations alleged in the Amended Complaint (Am. Compl. ¶¶ 140-51, 153, 159, 162-69, 282(f), 282(g); Pl. Proposed FFCL Ex. C); see, e.g., Koch v. Rodenstock, 06 Civ. 6586 (BSJ)(DF), 2012 WL 5844187 at *11 (S.D.N.Y. May 9, 2012) (Freeman, M.J.) (Report & Recommendation) (prejudgment interest on fraud claim calculated

24

from approximate dates plaintiff paid for counterfeit wine),
adopted, 2012 WL 5845455 (S.D.N.Y. Nov. 19, 2012) (Jones, D.J.);
Farrell v. Comstock Group, Inc., 211 A.D.2d 493, 493, 621
N.Y.S.2d 325, 326 (1st Dep't 1995) (prejudgment interest on
fraudulent misrepresentation claim was computed from the date
plaintiff was fraudulently induced to sign the agreement at
issue).

       68.  I, therefore, recommend that, plaintiff be awarded
pre-judgment interest at a rate of 9% per annum from June 13,
2007 to the date of the entry of judgment on the $3.5 million in
fraud-based damages he suffered.

### 5. Setoff for Amounts Paid by Settling Defendants

       69.  "Where a plaintiff settles with one of several
joint tortfeasors, New York General Obligations Law § 15-108(a)
provides that [plaintiff's] claim against the remaining tortfea-
sors is reduced by the greater of: (1) the amount paid for the
release; (2) the amount stipulated in the release; and (3) the
released tortfeasor's equitable share of the plaintiff's dam-
ages." Schipani v. McLeod, 541 F.3d 158, 164 (2d Cir. 2008),
citing N.Y. Gen. Oblig. Law § 15-108(a).

70.   "The Second Circuit has recognized that federal common law governs whether a defendant in an action brought under federal law is 'entitled to a credit against judgment for the settlement by another party to the dispute.'"   Chloe v. Zarafshan, 06 Civ. 3140 (RJH)(MHD), 2009 WL 2956827 at *7 (S.D.N.Y. Sept. 15, 2009) (Holwell, D.J.), quoting Singer v. Olympia Brewing Co., 878 F.2d 596, 599 (2d Cir. 1989) (holding that whether to credit a defendant with a set-off affects substantive, not procedural, rights).

71.   The right to "§ 15-108 apportionment" is not "an absolute right" but rather is "an affirmative defense . . . subject to forfeiture if not raised in a timely fashion." Schipani v. McLeod, supra, 541 F.3d at 164 (a "defendant forfeits its right under § 15-108(a) to an offset in the amount of the settling codefendant's equitable share if it waits until after summary judgment on liability to seek an apportionment"), citing Whalen v. Kawasaki Motors Corp., 92 N.Y.2d 288, 293, 703 N.E.2d 246, 249, 680 N.Y.S.2d 435, 438 (1998) and Totalplan Corp. of Am. v. Colborne, 14 F.3d 824, 832 (2d Cir. 1994); see also Bigelow v. Acands, Inc., 196 A.D.2d 436, 438, 601 N.Y.S.2d 478, 480 (1st Dep't 1993) ("[Non-settling defendant] bore the burden of establishing the equitable shares attributable to the settling defen-

dants for purposes of reducing the amount of [its] own responsibility for the damages.").

72.   Courts in the Second Circuit applying federal common law principles have also held that the non-settling defendant bears the burden of establishing the extent to which a recovery against it would be duplicative of a plaintiff's recovery from settling defendants, and that a defendant who fails to answer or participate in a damages inquest may not benefit from the set-off rule.  See Chloe v. Zarafshan, supra, 2009 WL 2956827 at *7.

73.   Thus, in cases involving the application of N.Y. Gen. Oblig. Law § 15-108(a) as well as in cases involving the application of federal common law, "[m]ost courts in the Second Circuit . . . have held that a defendant in default 'may not invoke the benefits of the set-off rule.'"  Govt. Employees Ins. Co. v. Simakovsky, supra, 2015 WL 5821407 at *13 (citation omitted) (applying federal common law principles and declining to allow a credit for payment by settling defendant in judgment against defaulting defendant for civil RICO violations, common law fraud and unjust enrichment); see, e.g., R.B. Dev., Co. v. Tutis Capital LLC, 12-CV-1460 (CBA)(SMG), 2015 WL 10567830 at *8 (E.D.N.Y. Nov. 6, 2015) (Report & Recommendation) (applying New York law), adopted, 2016 WL 1271033 (E.D.N.Y. Mar. 29, 2016);

27

State Farm Mutual Auto. Ins. Co. v. Grafman, 968 F. Supp. 2d 480, 483 (E.D.N.Y. 2013) (applying federal common law); RLI Ins. Co. v. King Sha Group, 598 F. Supp. 2d 438, 447 (S.D.N.Y. 2009) (Kaplan, D.J.) (applying New York law); Chloe v. Zarafshan, supra, 2009 WL 2956827 at *7 (applying federal law); Godfrey v. Soto, No. 06 Civ. 428 (NG)(JO), 2007 WL 2693652 at *7 (E.D.N.Y. Sept. 10, 2007)(applying New York law).  New York State courts reach the same result.  See Sniadach v. Gonzales, 191 Misc.2d 422, 425, 743 N.Y.S.2d 221, 223 (N.Y. Civil Court 2001) (due to non-settling defendants' default, no credit given for payments from non-settling defendants); Dixon v. Globe Realty of New York, Inc., 824 N.Y.S.2d 753 (Table), 2006 WL 2472671 at *2 (N.Y. Sup. Ct. 2006) ("While a court may consider evidence regarding a set off during an inquest on damages, the particular setoff under N.Y. Gen. Oblig. Law 15-108(a) is unavailable to defaulting defendants" (internal quotation marks and citation omitted)).

        74.  Neither Rosales nor Diaz have sought an offset for the settlement amount paid by the non-defaulting defendants or any apportionment of liability.  Nor has each party's equitable share of fault been determined by a finder of fact.

        75.  Rosales and Diaz are not entitled to any offset to account for funds plaintiff may have received in his settlements with the non-defaulting defendants.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respect-
fully recommend that judgment be entered for plaintiff against
Rosales and Diaz, jointly and severally, in the amount of $10.5
million under 18 U.S.C. § 1964(c), plus prejudgment interest on
$3.5 million at a rate of 9% per annum from June 13, 2007 to the
date of entry of judgment under N.Y. C.P.L.R. §§ 5001, 5004.

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of
the Federal Rules of Civil Procedure, the parties shall have
fourteen (14) days from receipt of this Report to file written
objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and
responses thereto) shall be filed with the Clerk of the Court,
with courtesy copies delivered to the Chambers of the Honorable
Paul G. Gardephe, United States District Judge, 40 Foley Square,
Room 2204, New York, New York, 10007, and to the Chambers of the
undersigned, 500 Pearl Street, Room 750, New York, New York
10007.  Any requests for an extension of time for filing objec-
tions must be directed to Judge Gardephe.  FAILURE TO OBJECT
WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS
AND **WILL** PRECLUDE APPELLATE REVIEW.  Thomas v. Arn, 474 U.S. 140,

29

155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d

Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049,

1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir.

1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983)

(per curiam).

Dated:   New York, New York
         July 21, 2016

                            Respectfully submitted,


                            _____
                            HENRY PITMAN
                            United States Magistrate Judge



Copies mailed to:

Counsel of Record